H. C. WAITE, Appellant v. D. S. HIGH.

SUCCESSIVE PARTNERSHIP: LIABILITY OF MEMBER — STATEMENT: *When evidence against firm*—BOOKS OF ACCOUNT: SECONDARY EVIDENCE—WITNESS COMPETENCY.

*Appeal from Bremer District Court.*—HON. P. W. BURR, Judge.

SATURDAY, DECEMBER 14, 1895.

Action to recover six hundred and eight dollars and seventy-two cents, balance alleged to be due for flour furnished by the plaintiff to be sold on commission, and sold. The defendant answered, denying generally, and the case was tried to a jury. Verdict and judgment were rendered in favor of defendant. Plaintiff appeals.—*Reversed.*

*E. L. Smalley* for appellant.

*M. B. Dougherty* and *Gibson & Dawson* for appellee.

Given, C. J. I. The issues will sufficiently appear from the following statement of the facts which are uncontroverted, or fully established by the evidence: On September 17 and October 12, 1888, the plaintiff shipped to A. G. Keene & Co., a firm composed of A. G. Keene and A. M. Corey, doing a commission business at Minneapolis, consignments of flour of different grades, to sell on commission, which consignments were duly received. In a short time after October twelfth, Keene retired from said firm and business. Corey ontinued the business alone till November 15, 1888, when he sold a one-half interest therein to the defendant, High. After that date the business was carried on by the firm of High & Corey until December first, when Corey sold his interest to L. D. Peck. Thereafter the business was carried on by the firm of High & Peck until about the first of March, 1889, when they closed out, and ceased business. Each of these successors to Keene & Co. received from his predecessor all of this flour that was on hand at the time of the transfer of the business, and High & Peck sold all that came into their hands before going out of business. Plaintiff alleged that the firm of High & Corey assumed the indebtedness of Keene & Co. and of Corey, and thererore asks to recover from defendant the value of the flour sold by Keene & Co. and by Corey. There was no evidence to sustain this claim, and it was not submitted to the jury. Plaintiff also seeks to recover of the defendant individually the value of so much of said flour as came into the possession of said firms of which he was a

member. It is not questioned but that the defendant is individually liable for whatever indebtedness may exist against either of his said firms to the plaintiff on account of said flour. The defendant admits in his evidence that there were sixty to eighty sacks that came into the hands of High & Corey, and contends that the credits which plaintiff admits are sufficient to pay for that amount of flour. The plaintiff claims that a much larger quantity came into the hands of said firm. The contention, then, is as to the quantity of said flour that came into the hands of the firms of which defendant was a member.

II. Plaintiff's first complaint is of a number of rulings made in taking the testimony, and especially upon the examination of G. W. Nash, who was called by the plaintiff to show the amount of said flour that came into the hands of High & Corey and High & Peck. It appears without question that Mr. High resided at some distance from the place of business, and did not give his personal attention to the business; that he employed Mr. Nash, as he says, "as a clerk to look after my business when I was not there." Nash testifies that he was employed to have the control of the funds; to attend to High's part of the business. "I was to step right into Mr. High's shoes as to buying and selling, and was to have control of the handling of the funds, deposit the funds in bank, and check them out. Mr. Corey said he would accept that arrangement." Mr. Nash kept the books and superintended the business for Mr. High from the time High went into business until it was finally closed out. Nash made an inventory of the stock on hand, including this flour, at the time High went into the business, and also when Peck was taken in as a partner with High. These inventories were entered on the books. Each successor to the business continued to use the same books of account that were used by Keene & Co., and without opening new accounts. At the close of the business these books were taken by Mr. Peck, and were not produced on the trial. Between January 20 and February 10, 1888, Mr. Nash, at the request of the plaintiff, made and handed to him a statement, identified as "Exhibit F," from the books, showing the amount of flour of each grade received and sold by High & Corey, and the amount received and sold by High & Peck. Afterward he made another statement,—Exhibit E,— which was mailed to plaintiff with a letter,—Exhibit H,—dated January 22, 1889, written and signed by Mr. Corey. This statement included the account of Keene & Co., and shows the quantity of each grade of flour transferred to High & Corey. A number of the rulings excepted to were made upon the ground that plaintiff had not laid the proper foundation for introducing secondary evidence of the contents of the books. The books were taken by Mr. Peck at the close of business, and the only reasons given for their nonproduction on the trial were that inquiries made a year or two before the trial, and again a few days before the trial,

failed to discover the whereabouts of Mr. Peck; and also because the books were in another state, and beyond the jurisdiction of the court. The inquiries as to the whereabouts of Mr. Peck were not made to that extent nor with that diligence that should have been exercised. It does not appear that diligent inquiry would not have led to ascertaining his whereabouts and the finding of the books. It does not follow that, because the books were in another state, their production at the trial could not have been secured. We think the court held properly that plaintiff was not entitled to introduce secondary evidence as to the contents of the books.

III. Mr. Nash having identified the statement, Exhibit F, plaintiff sought to have him state the amount of flour that came into the hands of High & Corey by refreshing his recollection from said memorandum. Mr. Nash stated, in substance, that he recollected, independently of the memorandum, that there was flour from plaintiff that came into the hands of High & Corey, but he did not remember the number of sacks, and that the statement did not refresh his memory as to the number. He was asked: "Can you refresh your recollection as to the number that was there by looking at that memorandum?" To this he answered: "Not to make my memory state the fact. I can only state what the statement contains." There was no error in holding that the witness might not state what the statement contained. Plaintiff, having identified Exhibit F, as already stated, offered the same in evidence, to which defendant objected, on the grounds that it was immaterial, improper, incompetent, secondary, hearsay, and not binding upon the defendant. The court overruled this objection to so much of Exhibit F as stated the account of High & Peck with plaintiff, and sustained it as to so much as showed the account of High & Corey with the plaintiff. The reason given for excluding the statement of the account with High & Corey was because it was made after that firm had been succeeded in business by High & Peck. The statement as to High & Peck was admitted because made during the existence of that partnership, and upon the theory that Mr. Nash made it by authority of defendant as his agent. Being individually liable for the indebtedness of both firms, and Nash having acted by authority for him during the time both firms were in existence, we think defendant was bound by this authorized act of Nash as to the entire statement, Exhibit F. Nash having authority to act for the defendant, the making of this statement, Exhibit F, was in the line of his duties and authority; and was admissible the same as if the statements had been made by the defendant himself. We think the court erred in not admitting the entire exhibit. For the same reason we think the court erred in excluding exhibit E. A number of other rulings of the court excepted to, in the taking of testimony, are discussed, but are not of sufficient importance to require further notice.

IV. The court instructed that under the evidence the jury would not be warranted in finding any amount due to the plaintiff from the defendant "for any flour sold by A. G. Keene & Co., A. M. Corey, or High & Corey." We think the court erred in so instructing as to flour sold by High & Corey. There was some evidence tending to show the amount of flour that came into the hands of High & Corey and the amount that came to High & Peck. Surely, the defendant is as liable for the flour sold by High & Corey as for that which was sold by High & Peck. The court, acting upon the theory that defendant was not liable, under the evidence, for flour sold by High & Corey, gave other instructions to the same effect, which we think were erroneous, and prejudicial to appellant. Our conclusion is that for the reason stated the judgment of the district court must be *reversed.*